IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| AMERICAN GREETINGS CORP., *et al.*, | ) | CASE NO.  1:04CV634 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge John M. Manos |
| | ) | |
| HARTFORD LIFE INSURANCE CO., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | <u>MEMORANDUM OF OPINION</u> |


On April 1, 2004, the Defendants removed this action to this Court from the Court of Common

Pleas for Cuyahoga County, Ohio.  Subsequently, each of the Defendants filed a motion to dismiss the

Plaintiff's Amended Complaint.  (<u>See</u> Docket Nos.  17, 19, 20, 21, and 22.)  The parties have fully

briefed the issues.

For the following reasons, the motions are Granted, except the motion of Defendant Newport

Group is Granted In Part.

I. <u>FACTS</u>

A. <u>The Parties</u>

American Greetings Corp., plaintiff, has brought suit against the Defendants arising out of various insurance plans allegedly issued and administered by the Defendants. The Plaintiff is an Ohio corporation that sells greeting cards and related "social expression products".[1] (Amended Complaint at ¶¶ 1, 5.) All the Defendants are non-Ohio entities.

Defendants Hartford Life Insurance Co. ("Hartford") and Connecticut General Life Insurance Co. ("Connecticut General") are described by the Plaintiff as experts in developing, promoting, and selling life insurance plans of the category at issue in this case. Defendant International Corporate Marketing Group ("ICMG") is alleged to be an "indirect" subsidiary of Hartford that provided marketing, administration, and related services with respect to Hartford's insurance plans. Defendant The Newport Group ("Newport") is an insurance broker and consultant that allegedly advised the Plaintiff with respect to the Hartford and Connecticut General insurance plans at issue. (Amended Complaint at ¶¶ 14-17.)

Defendants Integrated Administration Services, Inc., IAS Development Corp., and The McCamish Group, L.P. are affiliated companies owned and/or controlled by Defendant Henry F. McCamish, Jr. (collectively the "McCamish Defendants"). They allegedly provided design, marketing, and administration services with respect to the Hartford and Connecticut General insurance plans at issue. (Amended Complaint at ¶¶ 18-21.)

---

[1] Bank of New York, N.A. has been joined as an involuntary plaintiff as trustee for certain employee benefit funds at issue in this case. (Amended Complaint at ¶ 13.)

Defendant Milliman & Robertson, Inc. ("M&R") is a Washington corporation that allegedly provided design, marketing, and administration services with respect to the Hartford and Connecticut General insurance plans at issue.  (Amended Complaint at ¶ 22.)

B.  Factual Background

This case involves a particular kind of life insurance plan known as a Corporate Owned Life Insurance ("COLI") plan.  COLI plans are life insurance plans taken out by corporations on employees for the purpose of funding various employee benefits, such as health benefits.  COLI plans were initiated to take advantage of certain tax and accounting rules to provide cash flow for funding employee benefits.  In particular, positive cash flow was created through favorable tax treatment including:  (1) the deductibility of interest on policy-based loans, (2) tax-deferred buildup of policy values, and (3) the tax exempt receipt of death benefits upon the death of a covered employee.  As further explained below, the Plaintiff insured thousands of employees through its COLI plans. (Amended Complaint at ¶¶ 6, 25-27.)

The Plaintiff alleges that Defendant Newport, an insurance broker, advised it in connection with the evaluation and selection of COLI plans to meet its financial goals.  Newport held itself out as an expert in such plans and guided the Plaintiff through the decision-making process.  Newport further represented that in the event of a change in tax law or accounting treatment, the plans could be altered or unwound with little loss to the Plaintiff.  The Plaintiff states that it relied on Newport's expertise and assurances in evaluating and selecting its COLI plans.  (Amended Complaint at ¶¶ 32, 35.)

On August 1, 1989, the Plaintiff instituted its first COLI plan underwritten by Mutual Benefit Life Insurance Co. (the "MBL plan"), which was later assumed by Defendant Hartford.  On December

30, 1991, the Plaintiff instituted a second COLI plan underwritten by Defendant Connecticut General, and on January 31, 1994, the Plaintiff instituted another Hartford plan.  Without parceling out the specific conduct of each party, the Plaintiff alleges generally that Newport, the McCamish Defendants, and M&R all advised the Plaintiff with respect to these plans. In addition, after the COLI plans were instituted, Newport continued to provide administration services, for which it was paid several million dollars by the Plaintiff.  (Amended Complaint at ¶¶ 3,33-34, 38-40.)

In the initial years of the plans, the Plaintiff claimed various tax benefits, including hefty interest deductions from policy-based loans used to fund employee benefits.  In 1996, however, Congress prospectively disallowed COLI interest deductions as part of the Health Insurance Portability and Accountability Act.  Subsequently, the Internal Revenue Service ("IRS") began to challenge *retrospectively* the tax deductions and benefits claimed by numerous companies before the statutory change.  Courts found COLI plans to be "tax shams" and void *ab initio*.  See Winn-Dixie Stores, Inc. v. C.I.R., 113 T.C. 254 (1999), aff'd, 254 F.3d 1313 (11th Cir. 2001); In re CM Holdings, 254 B.R. 578 (Bankr. D. Del. 2000), aff'd, 301 F.3d 96 (3d Cir. 2002), and AEP, Inc. v. United States, 136 F. Supp. 2d 762 (S.D. Ohio 2001), aff'd, 326 F.3d 737 (6th Cir. 2003).  (Amended Complaint at ¶¶ 41-42.)

Some time around March 2003, the IRS contacted the Plaintiff and challenged the tax treatment of the Plaintiff's own COLI plans.  To avoid protracted litigation, the Plaintiff settled with the IRS.  The Plaintiff agreed to forego future tax benefits, as well as relinquish the benefits claimed in prior years.  As a result, two of the Plaintiff's COLI plans have been surrendered.  The original MBL plan remains active (without the contemplated tax benefits) because the costs associated with surrendering

-4-

the plan are prohibitive. (Amended Complaint at ¶¶ 43-44.)

The Plaintiff alleges that it was never fully apprised of the risks of changes to the tax treatment of COLI plans. To the contrary, the Plaintiff alleges that the Defendants made repeated assurances as to the financial effectiveness of the plans, and downplayed the risks and potential consequences of any changes to the tax treatment. The various purported misrepresentations and fraudulent concealments, as well as ways by which the COLI plans differed from typical life insurance plans, are detailed in the Amended Complaint. (Amended Complaint at ¶¶ 48-72.)

According to the Plaintiff, the Defendants knew or should have known of the financial risks associated with COLI plans years before the IRS explicitly challenged the Plaintiff's plans. For example, in 1991 an MBL official recognized in a memorandum that the plan's dividend structure could raise tax issues with "potentially disastrous results". Similarly, in 1993 the Connecticut Insurance Department questioned the dividend structure of Hartford's plans. In 1994, employees of several Defendants met with the Connecticut Insurance Department to discuss these issues. Other state regulators began questioning the viability of the plans during the same time period. These facts were never disclosed to the Plaintiff. (Amended Complaint at ¶¶ 66-72.)

The Plaintiff alleges that its losses (excluding tax deduction disallowances) exceed $80,000,000.00, which was paid to the Defendants as fees and premiums in connection with the evaluation, creation, and administration of the COLI plans. (Amended Complaint at ¶¶ 46-47.)

C. Procedural History

On January 30, 2004, the Plaintiff brought suit in the Court of Common Pleas for Cuyahoga County, Ohio. On February 27, 2004, the Plaintiff filed its Amended Complaint. On April 1, 2004,

the Defendants removed the action to this Court.  The Amended Complaint contains eleven counts.

Counts 1-4 are asserted against all Defendants and allege that the fundamental purpose of the COLI plans was to provide an economically viable method of funding employee benefits.  The changes in tax treatment undermined that purpose.  Because the COLI plans did not provide the promised financial benefits, the Plaintiff seeks recovery of its losses under the doctrines of mutual mistake (Count 1), frustration of purpose (Count 2), impossibility of performance (Count 3), and impracticability (Count 4).

The Plaintiff asserts Count 5 against all Defendants for unjust enrichment.  The Plaintiff alleges that it suffered substantial losses in the form of moneys paid to the Defendants for the development and administration of the failed COLI plans .  The Defendants, therefore, were unjustly enriched and should be required to disgorge their profits.

The Plaintiff asserts Count 6 against all Defendants for breach of contract.  The Plaintiff alleges that it entered into contracts with the Defendants regarding the development and administration of the COLI plans, and the Defendants breached those contracts by not disclosing all material information relating to the plans.

The Plaintiff asserts Count 7 against Newport, ICMG, the McCamish Defendants, and M&R for professional negligence.  The Plaintiff alleges that these Defendants breached the standard of care applicable to professional insurance brokers with regard to the advice and consulting services provided relating to COLI plans.

The Plaintiff asserts Count 8 against all Defendants for negligent misrepresentation.  The Plaintiff alleges that the Defendants negligently provided false and misleading information regarding COLI plans,

and the Plaintiff justifiably relied on such information to its detriment.

The Plaintiff asserts Counts 9 and 10 against all Defendants except Connecticut General.  In Count 9 the Plaintiff alleges that these Defendants breached fiduciary duties owed with respect to advice and consulting regarding the development and administration of the COLI plans.  In Count 10, the Plaintiff alleges that these Defendants committed "equitable fraud" by making false statements, misleading representations, and omissions regarding the COLI plans, and that the Plaintiff relied on such statements, representations, and omissions to its detriment.

The Plaintiff asserts Count 11 seeking declaratory relief against all Defendants. The Plaintiff seeks a declaration that the Defendants are responsible for the Plaintiff's future losses that may result from the failed COLI plans.

The Defendants have moved to dismiss all claims primarily on the grounds that the claims are barred by the applicable statutes of limitations, and otherwise do not state claims upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  LAW AND ANALYSIS

The Defendants have moved to dismiss because the Amended Complaint allegedly does not state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss, the allegations in the complaint are taken as true and viewed in the light most favorable to the Plaintiff.  A complaint will not be dismissed "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Hiser v. City of Bowling Green, 42 F.3d 382, 383 (6th Cir. 1994), cert. denied, 514 U.S. 1120 (1995), quoting, Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); Dana Corp. v. Blue Cross & Blue

Shield Mutual of Northern Ohio, 900 F.2d 882, 885 (6th Cir. 1990). The complaint need only give fair notice as to the claim and the grounds upon which it rests.  In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993).

Conclusory allegations, however, are not sufficient to state a claim.  Rather, a complaint must set forth specific facts which, if proven, would warrant the relief sought.  Sisk v. Levings, 868 F.2d 159, 161 (5th Cir. 1989).  In addition, a court is not bound to accept as true a legal conclusion couched as a factual allegation.  Papasan v. Allain, 478 U.S. 265, 286 106 S. Ct. 2932, 2944 (1986).  A court likewise need not accept unwarranted factual inferences.  Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).

A.  Statutes of Limitations

The Defendants argue that the Plaintiff's claims are barred by the applicable statutes of limitations.  This argument raises three issues: (1) what is the limitations period applicable to each claim, (2) when did the various causes of action accrue, thereby commencing the limitations periods, and (3) was the limitations period tolled as to any of the claims.  Ohio law applies to the determination and application of the statutes of limitations.  Cole v. Mileti, 133 F.3d 433, 436-37 (6th Cir. 1998).

1.  The Applicable Limitations Periods

There are three Ohio statute of limitations provisions relevant to the Defendants' motions, and at least as to certain claims, the parties dispute the applicable provision.  Under Ohio law, the statute of limitations is fifteen years for breach of a written contract, O.R.C. § 2305.06, and six years for breach of an unwritten or oral contract, express or implied.  O.R.C. § 2305.07.  In addition, Ohio law prescribes a four-year statute of limitations for certain business torts, including negligence and fraud.

-8-

O.R.C. § 2305.09(C) and (D) .

The underlying nature of the action, and not the form in which it is pled, determines which statute of limitations applies.  Hunter v. Shenago Furnace Co., 38 Ohio St. 3d 235, 237 (Ohio 1988); Hambleton v. R.G. Barry Corp., 12 Ohio St. 3d 179, 183 (1984); Peterson v. Teodosio, 34 Ohio St. 2d 161, 172-73 (1973); Helman v. EPL Prolong, Inc., 743 N.E.2d 484, 493 (Ohio App. 2000); Lynch v. Dean Witter Reynolds, Inc., 731 N.E.2d 1205, 1207 (Ohio App. 1999); Palm Beach Co. v. Dunn & Bradstreet, Inc., 665 N.E.2d 718, 722 (Ohio App. 1995); Wolfe v. Continental Casualty Co., 647 F.2d 705, 709 (6th Cir. 1981).

The parties first dispute the limitations period applicable to Counts 1-4 for mutual mistake, frustration of purpose, impossibility of performance, and impracticability against all Defendants.  The Defendants argue that these claims are subject to the four-year limitations period for fraud and negligence claims.  They assert that the substantive nature of these claims is identical to the claims for negligent advice and thus are subject to the same statute of limitations.   Counts 1-4 all state that the "fundamental purpose" of the COLI plans designed and promoted by the Defendants "was to provide an economically viable method of funding its employees' post-retirement health care benefits."  The substance of these counts is that, contrary to the representations and assurances of the Defendants, the COLI plans did not satisfy this essential purpose.  The substantive nature of these counts, therefore, is negligence.  The Defendants allegedly gave unprofessional and substandard advice in promoting the COLI plans, which did not achieve the desired benefits.  The four-year limitations period, therefore, applies.

The Plaintiff argues that these counts explicitly are asserted to arise "without the fault of any

-9-

party". Accordingly, the statute of limitations for tort claims cannot apply.  The mere recitation of this phrase, however, is not sufficient to avoid the shorter limitations period.  The law requires the Court to apply the limitations period based upon the substantive nature of the claims, and not the form in which they are pled.  These claims substantively bare no significant difference from the negligence claims.

Alternatively, some of the Defendants take the position that at most, the six-year limitations period for oral or implied contracts applies pursuant to O.R.C. § 2306.07.  Under this view, the Defendants' assurances with respect to the anticipated benefits of the COLI plans created oral or implied contracts for such benefits.  Although the Court takes the position that the four-year limitations period applies, this alternative characterization is not wholly unreasonable.  For completeness, therefore, in subsequent sections the Court will analyze Counts 1-4 under both the four-year and six-year provisions.

The Plaintiff also argues, without citation to authority, that claims for  mutual mistake, frustration of purpose, impossibility of performance, and impracticability are subject to a ten-year limitations period pursuant to O.R.C. § 2305.14.  Such claims, however, are not mentioned in the statute. Rather, the statute states: "An action for relief not provided for in sections 2305.04 to 2305.131 and section 1304.35 of the Revised Code shall be brought within ten years after the cause thereof accrued." There is no basis to apply such a "catch-all" statute to claims that sound either in tort or implied contract.  The ten-year limitations period does not apply.

Count 5 asserts a claim for unjust enrichment against all Defendants.  Claims for unjust enrichment are "quasi-contractual" in nature and have been deemed, for statute of limitations purposes, as "implied contracts not in writing".  The limitations period, therefore, is six years pursuant to O.R.C. §

-10-

2305.07.  Hambleton, 12 Ohio St. 3d at 183; Board of Education of Rocky River v. Board of

Education of Fairview Park, 597 N.E.2d 217, 219 (Ohio App. 1989); Ignash v. First Service Federal

Credit Union, 2002 WL 1938414 at *4 (Ohio App. August 22, 2002).  The parties do not dispute that

the six-year limitations period applies to Count 5.

Count 6 asserts a claim for breach of contract against all Defendants.  The Plaintiff argues that

the relevant contracts are in writing, so a fifteen-year limitations period applies pursuant to O.R.C. §

2305.06.  The Defendants counter that the contract claim is substantively identical in its allegations to

the negligence and/or fraud claims, so the four-year limitations period applies.  Again, the substance of

the claim, and not the form in which it is pled, determines the applicable statute of limitations.

There are four written contracts referenced in the Amended Complaint.  Three of them

constitute the COLI plans themselves.  The fourth is a Service Agreement executed between the

Plaintiff and Defendant Newport.  The Plaintiff, however, does not identify any specific term of these

written contracts that is breached.  For example, the Plaintiff does not allege that the insurance

companies did not provide the insurance benefits as stated in polices, nor that the other Defendants,

particularly Newport, did not comply with its obligations in servicing and administering the plans.

The Plaintiff describes the alleged breach of contract as follows:

> As set forth herein, defendants failed to fulfill their contractual obligations to
> American Greetings, including the covenant of good faith and fair dealing that is
> implicit in all contracts that would require defendants to disclose all material
> information relating to the COLI plans in a thorough and accurate manner.

Amended Complaint at ¶ 99.  The Plaintiff does not, here or elsewhere in the Amended Complaint,

reference a specific provision of any of the written contracts that is breached.  General references to

-11-

breach of a contract are not sufficient to allege breach of a specific term. <u>Palm Beach</u>, 665 N.E. 2d at 721 (use of phrase "*inter alia*" in complaint was deemed insufficient to allege breach of any specific contract term). The Court concludes, therefore, that the fifteen-year limitations period for breach of a written contract does not apply.

The Court, therefore, must determine the substantive nature of Count 6. As the Defendants argue, some courts have deemed claims pled as breach of contract to be tort claims in substance. For example, when an allegation of a contractual breach of an implied duty of good faith is indistinguishable from an allegation of fraud or bad faith, the four-year limitations period for fraud claims applies. <u>Palm Beach</u>, 665 N.E.2d at 722; <u>Wolfe</u>, 647 F.2d at 709-10. <u>See also</u> <u>Lynch</u>, 731 N.E.2d at 672-73 (statute of limitations for securities fraud applied to claims styled as breach of contract). The four-year limitations period for fraud claims also applies to claims for reformation or rescission of written documents based on fraudulent representations. <u>Seitz v. Stevenson</u>, 1998 WL 328413 at *6 (Ohio App. June 16, 1998) (applied to reformation and rescission of deeds). Similarly, the four-year limitations period applies to contract claims that simply restate professional negligence claims. <u>Fronczak v. Arthur Andersen, L.L.P.</u>, 705 N.E.2d 1283, 1287 (Ohio App. 1997); <u>Offenbeher v. Lomax, Soful, & Foster, Inc.</u>, 1996 WL 539134 at *6 (Ohio App. September 26, 1996). The Defendants argue that the contract claim here likewise is indistinguishable from the fraud or negligence claims.

When read in the context of the entire Amended Complaint, the claim for breach of contract can be understood as a breach of promises that the COLI plans would yield certain financial benefits that were never realized. Subsumed within this general characterization are the specific allegations that

-12-

the Defendants breached duties to disclose material information regarding the risks and benefits of COLI plans.  The promised benefits, however, were never incorporated into any of the written agreements, but rather are independent assurances.  In substance, therefore, the promises at most created oral and/or implied contracts.  Accordingly, a six-year limitations period applies to Count 6 pursuant to O.R.C. § 2305.07.

Counts 7 and 8 assert negligence claims against various Defendants, and Count 9 asserts a claim for breach of fiduciary duty.  O.R.C. § 2305.09(D) establishes a four-year statute of limitations period "for an injury to the rights of the plaintiff not arising on contract nor enumerated in [certain other] sections of the Revised Code."  Pursuant to this provision, the statute of limitations is four years for claims of professional negligence and negligent misrepresentation by business advisers, like accountants and financial brokers.  Fronczak, 705 N.E.2d at 1285; Castillo v. Nationwide Financial Services, Inc., 2003 WL 22078046 at * 3 (Ohio App. September 9, 2003); Offenbeher v. Lomax, Soful, & Foster, Inc., 1996 WL 539134 at *5 (Ohio App. September 26, 1996).  Similarly, section 2305.09(D) has been applied to claims for breach of a fiduciary duty.  Helman, 743 N.E.2d at 497; Kondrat v. Morris, 692 N.E.2d 246, 251 (Ohio App. 1997).  The parties do not dispute that a four-year limitations period applies to Counts 7-9.

Count 10 asserts a claim for equitable fraud against various Defendants.  A four-year statute of limitations applies to fraud claims pursuant to O.R.C. § 2305.09(C).   The parties do not dispute that a four-year limitations period applies to Count 10.[2]

---

[2]        Count 11 asserts a claim for a declaratory judgment as to liability for future losses
           suffered by the Plaintiff.  In substance, Count 11 derives from the allegations underlying

In summary, for the foregoing reasons the Court concludes that the following statutes of limitations apply: (1) four years, or at most six years, as to Counts 1-4, (2) six years as to Counts 5 and 6, and (3) four years as to Counts 7-10.

2.  Accrual of the Claims

Having determined the applicable statutes of limitations, the Court next considers when the various causes of action accrued.  The accrual date is when the limitations periods began.

The Court first considers the Plaintiff's tort claims: Counts 1-4 (assuming they're substantively negligence claims), and Counts 7-10.  The Defendants argue that these claims, with the exception of fraud, accrued at the time they were advising the Plaintiff with respect to the adoption of the COLI plans.  This means that the limitations period commenced, at the latest, in January 1994 when the third COLI plan was implemented.  The Plaintiff, however, argues that these claims are timely because they did not accrue until many years later, when the Plaintiff discovered and/or was damaged by the Defendants' wrongful conduct.

O.R.C. § 2305.09(D) provides explicitly that a cause of action for fraud accrues when the fraud is, or should have been, discovered. See also Zemcik v. LaPine Truck Sales & Equipment Co., 706 N.E.2d 860, 865 (Ohio App. 1998); Palm Beach Co. v. Dunn & Bradstreet, Inc., 665 N.E.2d 718, 720 (Ohio App. 1995).  This principle is known as the "discovery rule".

In contrast to fraud, however, the relevant clause of O.R.C. § 2305.09(D) does not explicitly provide for a discovery rule as to other business torts of the type asserted here.  In Investors REIT One

_____

the other counts, so no independent analysis is required as to the statute of limitations for Count 11.

-14-

v. Jacobs, 46 Ohio St. 3d 176 (1989), the Ohio Supreme Court held that there is no discovery rule as to claims of accountant negligence.  The court stated:  "The legislature's express inclusion of a discovery rule for certain torts arising under R.C. 2305.09, including fraud and conversion, implies the exclusion of other torts arising under the statute, including negligence."  Id. at 181.  Thus, the limitations period commenced when the allegedly negligent act occurred, i.e., when the negligent advice was given. Id. at 182.

Numerous courts have applied Investors REIT in rejecting a discovery rule for claims of various types of professional negligence in the business context, including accounting services, investment advice, and other business advice and representations.  In such cases, the cause of action accrues when the original negligent misrepresentations were made.  See, e.g., Castillo v. Nationwide Financial Services, Inc., 2003 WL 22078046 at * 3 (Ohio App. September 9, 2003); Jim Brown Chevrolet, Inc. v. S.R. Snodgrass, A.C., 752 N.E.2d 335, 337 (Ohio App. 2001); Offenbeher v. Lomax, Soful, & Foster, Inc., 1996 WL 539134 at *5 (Ohio App. September 26, 1996); Kondrat v. Morris, 692 N.E.2d 246, 251 (Ohio App. 1997); Aluminum Line Products Co. v. Brad Smith Roofing Co., 671 N.E.2d 1343,1350 (Ohio App. 1996) (rejecting discovery rule for claims of negligent building construction); Hater v. Gradison Division of McDonald and Company Securities, Inc., 655 N.E.2d 189, 197 (Ohio App. 1995); Herbert v. Banc One Brokerage Corp., 638 N.E.2d 161,163 (Ohio App. 1994).

The negligence alleged here in Counts 1-4, 7, and 8 is comparable to the negligent advice given in other business and investment contexts.  Accordingly, the Court concludes that the discovery rule does not apply to these claims.

Similarly, the language of section 2305.09(D) does not provide for a discovery rule for claims of breach of a fiduciary duty.  Rather, the cause of action accrues when the breach of duty occurs, not when it is discovered.  Helman, 743 N.E.2d at 497-98; Kondrat, 692 N.E.2d at 251; Herbert, 638 N.E.2d at 164.  Accordingly, the discovery rule also does not apply to the Plaintiff's Count 9 for breach of a fiduciary duty.

The Plaintiff attempts to avoid the limits of the discovery rule by relying on the principle of "delayed damages".  In certain cases, the damages from a negligent act may not manifest until some period of time after the negligent act itself.  Courts sometimes have held that the cause of action does not accrue until the damages actually occur.  For example, in Wisecup v. Gulf Develpment, 565 N.E.2d 865 (Ohio App. 1989), the plaintiff brought suit for the negligent preparation of tax returns.  The plaintiff alleged that the limitations period did not commence until he was actually damaged when the IRS rendered an adverse tax decision. The defendant argued that the limitations period commenced when the returns were prepared, years earlier.  The court ruled in favor of the plaintiff.  Id. at 869.

Th delayed damages principle is distinct from the discovery rule.  Delayed damages cases deal with the onset of the injury, not the discovery of an injury which already has occurred.  Under the delayed damages principle, a plaintiff's knowledge or discovery of the damages is irrelevant.  Point East Condominium Owners' Association, Inc. v. Cedar House Associates Co., 663 N.E.2d 343, 350 (Ohio App. 1995).

The Plaintiff alleges that, pursuant to the delayed damages principle, the tort claims did not accrue until some time around March 2003, when the IRS specifically challenged the Plaintiff's tax treatment of its COLI plans.  Only then did actual damages manifest from the Defendants' wrongful

-16-

conduct.  The Defendants argue that the delayed damages principle is inapplicable here.  The Court

agrees with the Defendants.

Wisecup, an Ohio appellate decision, was decided before the Ohio Supreme Court's decision

in Investors REIT.  In Riedel v. Houser, 607 N.E.2d 894 (Ohio App. 1992), involving a claim for

negligent preparation of tax returns, the court analyzed the two prior cases.  The court concluded that in

view of the plain language of O.R.C. § 2305.09(D), any difference between the delayed damages

principle and the discovery rule was a "distinction without a difference".   In addition, to the extent

Wisecup and Investors REIT conflicted, the latter controls.  Id. at 896.  The court concluded,

therefore, that the delayed damages principle was not applicable to claims of accountant negligence.

In similar reliance on Investors REIT, other courts likewise have refused to extend the

limitations period by virtue of delayed damages principles in cases involving business professional

negligence, negligent misrepresentation, or breach of fiduciary duty.   Such courts have agreed that

O.R.C. § 2305.09(D) does not permit the extension of the limitations period for delayed damages.

Accordingly, as stated above, the limitations period commences when the negligent advice is given or

fiduciary duty is breached.  Jim Brown, 752 N.E.2d at 337-38; Hater, 655 N.E.2d at 195-96;

Fronczak v. Arthur Andersen, L.L.P., 705 N.E.2d 1283, 1285-86 (Ohio App. 1997); Rihm v. Wade,

1999 WL 1127403 at *3-4 (Ohio App. December 10, 1999).

The delayed damages cases, however, are not unanimous.  Other courts have continued to

apply the delayed damages principle despite the holding of Investors REIT and its progeny.  See Point

East, 663 N.E.2d at 349-50 (negligent building construction), citing, Velotta v. Leo Petronzio

Landscaping, Inc., 69 Ohio St. 2d 376, 379 (1982) (negligent building construction); Gray v. Estate of

-17-

_Barry_, 656 N.E.2d 729, 730-31 (Ohio App. 1995) (claim for negligent failure to file tax returns accrues on date the IRS assessed a penalty, not when the filing was due).  See also _Kunz v. Buckeye Union Insurance Co._, 1 Ohio St. 3d 79, 81 (1982) (claim for insurance coverage accrues on the date of loss, not the date of contracting).  Many of such cases involve negligent building construction, not negligent business advice or services.  Those business cases that apply the delayed damages principle post-_Investors REIT_ are in the minority.

The Ohio Supreme Court confirmed the validity of _Investors REIT_ in _Grant Thornton v. Windsor House, Inc._, 57 Ohio St. 3d 158, 160 (1991).  In _Grant Thornton_, the counter-claimant actually asserted a delayed damages theory in arguing that counterclaims for accountant negligence were timely.  The counterclaims alleged negligent audits of Medicaid reimbursements, for which the Ohio Department of Public Welfare ("OPDW),the state Medicaid agency, had demanded repayment.  As described by the Ohio Supreme Court, the appellate court ruled that the counterclaims "did not accrue until Windsor sustained damage – when the ODPW ordered repayment".  _Id_. at 159.  The Ohio Supreme Court rejected this delayed damages argument.

The Court concludes that in this case, _Investors REIT_, _Grant Thornton_, and their progeny preclude extension of the limitations period under a delayed damages theory.  This conclusion applies to the Plaintiff's non-fraud tort claims – Counts 1-4 and 7-9.  These claims accrued at the time the alleged negligent advice was given and fiduciary duty was breached, which is no later than January 1994.

As stated above, O.R.C. § 2305.09(D) explicitly establishes a discovery rule for fraud.  Therefore, Count 10 for equitable fraud accrued when the fraud was, or should have been, discovered.  Absent actual awareness, the limitations period begins when a party possesses facts sufficient to alert a

-18-

reasonable person to the possibility of wrongdoing.  Palm Beach, 665 N.E.2d at 720; Zemcik, 706

N.E.2d at 866; Seitz v. Stevenson, 1998 WL 328413 at *5 (Ohio App. June 16, 1998).

      The Defendants argue that the Plaintiff knew or should have known of the alleged fraud more

than four years before this action was brought.  They cite to the following: (1) media coverage of the

risks of COLI plans as early as 1992; (2) IRS Technical Advisory Memoranda of 1998 and 1999 in

which the IRS expressed objections to COLI deductions, (3) other publications in the late 1990s

regarding the IRS position on COLI deductions, and (4) COLI litigation beginning in 1997 and 1998,

including an adverse decision of the United States Tax Court dated October 19, 1999.  See Winn-

Dixie Stores, Inc. v. C.I.R., 113 T.C. 254 (1999), aff'd, 254 F.3d 1313 (11th Cir. 2001).  The

Defendants argue that one or more of these events placed, or should have placed, the Plaintiff on notice

of its purported fraud claim.

      The Plaintiff counters that it did not become aware of the facts underlying its fraud claim until

around March 2003, when the IRS specifically challenged the Plaintiff's own COLI plans.  Before this

time, the Defendants' repeated assurances and administration of the plans gave the Plaintiff no reason to

question their viability.  It asserts that the materials and events relied upon by the Defendants are not

items that would come into the Plaintiff's knowledge and awareness as a matter of course.

      This issue is not appropriately resolved in the context of a motion to dismiss.  The discovery

rule ordinarily presents factual issues as to when an injury was or should have been discovered.

Therefore, dismissal pursuant to Rule 12(b)(6) is appropriate only if under the facts alleged, there is no

scenario by which the limitations period is satisfied.  Tri-State Computer Exchange, Inc. v. Burt, 2003

WL 21414688 at *3 (Ohio App. June 20, 2003).  At this early stage, the Court is unable to rule as a

matter of law as to when the Plaintiff knew or should have known of the facts underlying its fraud claim. Accordingly, there is a justiciable issue as to whether Count 10 for equitable fraud is time-barred.

The Court now turns to the Plaintiff's contract claims: Counts 1-4 (assuming these are contract, not negligence, claims), and Count 6.  As concluded in the previous section, these claims are subject to the six-year limitations period for oral and implied contracts pursuant to O.R.C. § 2305.07.  The limitations period runs from the alleged breach.

The Plaintiff essentially alleges two categories of breach: (1) breach of promises for realizing the financial benefits of COLI plans, and (2) the breach of obligations to disclose fully and accurately all material information relating to COLI plans.  As to the first breach, courts and the IRS consider these COLI plans to be void *ab initio*, so the promised benefits were never realized.  The breach, therefore, occurred when the plans were implemented.  In addition, the alleged breaches regarding information disclosure were made in connection with creating and implementing the plans.  This breach, therefore, also occurred when the plans were implemented.  Accordingly, the contract claims accrued in January 1994 at the latest, when the third COLI plan was implemented.

The Court next considers Plaintiff's Count 5 for unjust enrichment, for which a six-year limitations period applies pursuant to O.R.C. § 2305.07.  Applying the reasoning of <u>Investors REIT</u>, courts have held that there is no discovery rule for claims of unjust enrichment.  Rather, the cause of action accrues on the date that money is retained under unjust circumstances.  <u>Palm Beach</u>, 665 N.E.2d at 723; <u>Ignash v. First Service Federal Credit Union</u>, 2002 WL 1938414 at *4 (Ohio App. August 22, 2002).

As stated with respect to the claims for breach of implied contract, the benefits of the COLI

-20-

plans were never realized because the plans are void *ab initio*.  The Defendants, therefore, began

retaining money under unjust circumstances at the time the plans were implemented.  Accordingly, the

claim for unjust enrichment accrued in January 1994 at the latest, when the third COLI plan was

implemented.

In summary, for the foregoing reasons the Court concludes that Counts 1-9, all the claims

except for equitable fraud, accrued at the time the COLI plans were implemented, or January 1994 at

the latest.  Accordingly, whether a four-year or six-year limitations period applies, these claims are

barred unless the limitations periods were otherwise tolled.

With respect to Count 10, the Court concludes that a justiciable issue exists as to when the

Plaintiff knew or should have known of the facts underlying the claim for equitable fraud.   Accordingly,

for the limited purposes of the current motion, and subject to subsequent information obtained during

discovery, this claim is not time-barred.

### 3.  Tolling

The Plaintiff asserts that even assuming this action was filed beyond the applicable limitations

periods, the limitations periods were tolled.  The claims, therefore, are not time-barred.

The Plaintiff first argues that the limitations periods were tolled due to partial payments.  It

alleges that because the insurance contracts and the Service Agreement with Newport require periodic

payments, the limitations period runs from the date of the last payment.  If correct, the claims are timely.

O.R.C. § 2305.08 provides in part: "If payment has been made upon any demand founded on

a contract, . . . an action may be brought thereon within the time limited by sections 2305.06 and

2305.07 of the Revised Code, after such payment".  Thus, for example, in the  case of a loan based

upon an oral contract, the limitations period ran from the last interest payment.  Cummings v. Groszko, 603 N.E.2d 387, 390 (Ohio App. 1992).  The tolling for partial payments applies  when a defendant made a payment towards a contractual indebtedness.  Slack v. Cropper, 757 N.E.2d 404, 411 (Ohio App. 2001).

By its terms, this provision can only apply to the contract claims.  Even as to the contract claims, however, the Plaintiff misapplies the doctrine.  The provision is consistent with the general principle that the statute of limitations on a contract claim runs from the breach.  A breach of contract does not occur while payments are being made.  See Grosko, 603 N.E.2d at 390. (defendant partly performed her part of the bargain by paying interest during the initial loan period).  For example, if the Plaintiff had stopped paying the insurance premiums or fees on the Service Agreement, any claims of the Defendants would run from the last payment.  The Plaintiff's claims against the Defendant, however, are not comparable.

Here, the alleged breaches of contract do not arise from any purported refusals of the Defendants to fulfill any monetary obligations.  The breaches are an alleged neglect to provide complete and accurate information about COLI plans, and the lack of fulfillment of the promises of financial benefits.  The claims do not arise out of any demand for payment on a contractual indebtedness as required by section 2305.08.  Accordingly, the limitations periods are not tolled pursuant to this provision.

The Plaintiff also alleges that the statutes of limitations are tolled by the doctrine of equitable estoppel.  Equitable estoppel precludes a party from asserting certain facts when, by its own conduct, it has induced another to change his position detrimentally in good-faith reliance on such conduct.

Helman v. EPL Prolong, Inc., 743 N.E.2d 484, 495 (Ohio App. 2000); Welfley v. Vrandenburg, 1996 WL 145467 at *3 (Ohio App. March 29, 1996).  The doctrine may be used to prevent inequitable application of the statute of limitations.  Helman, 743 N.E.2d at 495; Livingston v. Diocese of Cleveland, 710 N.E.2d 330, 339 (Ohio App. 1998); Cerney v. Norfold & Western Railway Co., 662 N.E.2d 482, 488 (Ohio App. 1995); Schrader v. Gillette, 549 N.E.2d 218, 221 (Ohio App. 1988).

The elements of equitable estoppel are: (1) a party made a factual misrepresentation, (2) the misrepresentation was misleading, (3) it induced actual reliance which is reasonable and in good faith, and (4) detriment to the relying party.  Helman, 743 N.E.2d at 495; Hoeppner v. Jess Howard Electric Co., 780 N.E.2d 290, 297 (Ohio App. 2002); Welfley, 1996 WL 145467 at *3; Livingston, 710 N.E.2d at 339; A.S. v. Fairfield School District, 2003 WL 22764383 at *2 (Ohio App. November 24, 2003).  With respect to the first two elements, actual or constructive fraud is required.  Helman, 743 N.E.2d at 495; Livingston, 710 N.E.2d at 339.

In addition, in the context of a statute of limitations, the misrepresentations must be intended specifically to delay the filing of a lawsuit, such as misstating the limitations period, promising a favorable settlement if a lawsuit is not brought, or similar conduct.  Helman, 743 N.E.2d at 495; Livingston, 710 N.E.2d at 339; Cerney, 662 N.E.2d at 488; A.S., 2003 WL 22764383 at *2; Welfley, 1996 WL 145467 at *3 .  Alternatively, the defendant must have concealed or destroyed evidence of wrongdoing which the plaintiff could not discover despite due diligence.  Ignash v. First Service Federal Credit Union, 2002 WL 1938414 at *3 (Ohio App. August 22, 2002).  Generally, to toll a statute of limitations, the defendant's conduct must somehow have been calculated to induce a party to forego the right to sue.  Hoeppner, 780 N.E.2d at 297; Welfley, 1996 WL 145467 at *3.

-23-

Here, the Plaintiff's allegations for equitable tolling are no different from its allegations of substantive fraud and negligent misrepresentation.  It essentially seeks to impose the discovery rule, rejected above, through the "back door" by characterizing the circumstances as equitable estoppel. What is required to toll a statute of limitations, however, are allegations that the Defendants' conduct specifically induced the Plaintiff to forego or delay filing suit, resulting in a time bar.  No such specific allegations are made in the Amended Complaint.  Equitable tolling, therefore, does not apply.

The Plaintiff relies on <u>Wal-Mart Stores, Inc. v. AIG Life Insurance Co.</u>, 860 A.2d 312 (Delaware 2004), in which the Delaware Supreme Court ruled under Delaware law that the trial court erred in granting a motion to dismiss based on the statute of limitations.  The court concluded that there were factual issues warranting discovery as to whether the limitations period was tolled.  In contrast to Ohio law, however, under Delaware law the doctrine of equitable tolling as applied is equivalent to Ohio's discovery rule:

> Under the "<u>discovery rule</u>" the statute is tolled where the injury is inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of.  In such a case, the statute will begin to run only upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts. [Citations omitted.]

<u>Id</u>. at 319 (emphasis added).  As analyzed in the previous section, there is no discovery rule under Ohio law for the Plaintiff's claims (except fraud).  <u>Wal-Mart</u>, therefore, is inapplicable.  The statutes of limitations were not tolled in this case.

4.  <u>Conclusion On Statutes of Limitations</u>

For the foregoing reasons, Counts 1-9 are barred by the applicable statutes of limitations.  As

-24-

to Count 10 for equitable fraud, a justiciable issue exists as to whether this claim is time-barred.

        C.  <u>Sufficiency of Equitable Fraud Allegations</u>

      Because of the Court's conclusions on the statutes of limitations, the Court need only address the substantive allegations of Count 10.  In this count, the Plaintiff asserts a claim for "equitable fraud", also known as constructive fraud.  The Defendants argue that the Plaintiff does not state a claim for equitable fraud pursuant to Rule 12(b)(6).

      Equitable fraud is similar to common law fraud, but not identical.  The elements of common law fraud are: (1) a representation or, when there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.  <u>Gaines v. Preterm-Cleveland</u>, 33 Ohio St. 3d 54, 55 (1987); <u>see</u> <u>also</u> <u>Davis v. Sun Refining and Marketing Co.</u>, 671 N.E.2d 1049, 1058 (Ohio App. 1996); <u>Lepera v. Fuson</u>, 613 N.E.2d 1060, 1063 (Ohio App. 1992).

      In contrast, equitable fraud does not require an actual intent to mislead.  Rather, equitable fraud occurs when false representations are made in the context of special confidential or fiduciary relationship which affords one party the opportunity to take undue advantage, or exercise undue influence over, another.  In such cases, the law imposes fraud without an intent to deceive to protect valuable social relationships based on confidence.  <u>Perlberg v. Perlberg</u>, 18 Ohio St. 2d 55, 58 (1969); <u>Hanes v. Giambrone</u>, 471 N.E.2d 801, 808 (Ohio App. 1984); <u>Associations For Responsible Development v. Firestone, LTD Partnership</u>, 1998 WL 785330 at *3 (Ohio App. November 13,

1998); Ohio Knife Corp. v. A.C. Strip, 1992 WL 308365 at *6 (Ohio App. October 21, 1992).  As with common law fraud, equitable fraud requires some false representation or concealment of a material fact.  Firestone, 1998 WL 785330 at *5.  Equitable fraud is asserted against all Defendants except Connecticut General.  To analyze whether the Plaintiff states a claim, the Court must consider the nature of the contacts between the Plaintiff and the various Defendants.

With respect to Defendant Hartford and its affiliate ICMG, the only significant contact with the Plaintiff, that is explicitly stated in the Amended Complaint, is the Plaintiff's purchase of Hartford COLI policies.  There are no allegations of any misrepresentations or fraudulent conduct directed specifically at Hartford or ICMG.

Similarly, from the pleadings the Court can ascertain only indirect contacts between the Plaintiff and the McCamish Defendants and Defendant M&R.  The Plaintiff states that these Defendants "were the masterminds behind, marketed and profited from those defective [COLI] plans".  The Plaintiff further states that their involvement was in the creation of the COLI concept, but their conduct "was not and could not have been fully known to American Greetings".  Finally, the Plaintiff states that these Defendants are liable because they "were effectively in an agency relationship with the remaining Defendants, and that it "was unaware of the identity or role of the McCamish Defendants and Milliman prior to the IRS's COLI plan intervention".  (Plaintiff's Brief In Opposition, Docket No. 39, at 1, 4, and 7.)

The gravamen of the specific allegations of misconduct are directed at Defendant Newport. For example, the Plaintiff alleges that Defendant Newport gave assurances that there was little risk of adverse tax law changes because the COLI policies would either be "grandfathered" under existing

-26-

law, or could be modified or unwound at little expense.  (Amended Complaint at ¶¶ 6, 35.)  "American Greetings' reliance was specifically requested and encouraged by Newport."  It made numerous representations regarding its expertise and market dominance with respect to COLI plans.  (Amended Complaint at ¶ 8.)  Newport made explicit representations regarding the various financial benefits of COLI plans, and assumed primary responsibility for plan design, policy selection, and administration of the plans.  (Amended Complaint at ¶ 26, 32, 40.)  In particular, James Campisi of Newport oversaw and was responsible for such services.  (Amended Complaint at ¶ 30.)  Defendant Newport procured an analysis recommending the use of a grantor trust with Georgia situs in connection with administering the plans.  (Amended Complaint at ¶ 34.)

Aside from these specific allegations against Newport, the remainder of the significant allegations in the Amended Complaint are directed against the "Defendants" collectively, without parceling out the conduct of each.

All the Defendants argue that the allegations in the Amended Complaint are insufficient to assert the existence of any fiduciary relationship, a requisite for equitable fraud.  A fiduciary relationship is one "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."  Ed Schory & Sons, Inc. v. Society National Bank, 75 Ohio St. 3d 433, 442 (1996); Stone v. Davis, 66 Ohio St. 2d 75, 78 (1981); Craggett v. Adell Insurance Agency, 635 N.E.2d 1326, 1331 (Ohio App. 1993); Firestone, 1998 WL 785330 at *3.  A fiduciary relationship may be created out of an informal relationship, but only when both parties understand that a special trust or confidence has been created. Ed Schory, 75 Ohio St. 3d at 442; Stone, 66 Ohio St. 2d at 78; Unbaugh Pole Building Co., Inc. v.

-27-

Scott, 58 Ohio St. 2d 282, 286 (1979); Craggett, 635 N.E.2d at 1331-32; Firestone, 1998 WL 785330 at *3. When parties act to protect their own interests and operate at arms-length from one another, their relationship is not fiduciary in nature.  Ed Schory, 75 Ohio St. 3d at 443; Firestone, 1998 WL 785330 at *3.

In the insurance context, the relationship of insurance agent and client does not ordinarily create a fiduciary relationship.  See Craggett, 635 N.E.2d at 1332.  Similarly, an insurance company that sells policies has been deemed not to be a fiduciary of its customers.  Although the insurance company typically has greater expertise in insurance matters, that imbalance is insufficient by itself to create a fiduciary relationship.  Greenberg v. The Life Insurance Co. of Virginia, 177 F.3d 507, 521-22 (6th Cir. 1999) (applying Ohio law).

The Court concludes that there was no fiduciary relationship between the Plaintiff and Defendants Hartford and its affiliate ICMG.  The sale of the Hartford policies is not sufficient to plead the necessary special relationship of confidence and trust.  The complexity of the COLI plans does not alter this conclusion.

Similarly, there was no fiduciary relationship between the Plaintiff and the McCamish Defendants and Defendant M&R.  Because the Plaintiff was not even aware of their involvement at the time the COLI plans were implemented, there could not have been any mutual understanding that a relationship of confidence and trust had been created.

The situation differs with respect to Defendant Newport.  The Plaintiff's allegations describe critical involvement of Newport with respect to advising the Plaintiff on COLI plans generally, the selection of specific plans, and the administration of the plans once implemented.  The Court concludes

-28-

that these allegations create at least a justiciable issue as to the existence of a fiduciary relationship, so resolution of this issue is inappropriate in the context of a motion to dismiss.

The Defendants also argue that the Plaintiff has not pled fraud with particularity pursuant to Fed. R. Civ. P. 9(b).  Allegations of fraud must be pled with particularity, and generalized or conclusory allegations that the Defendants' conduct was fraudulent are insufficient.  Fed. E. Civ. P. 9(b); Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001); Craighead v. E.F. Hutton & Company, Inc., 899 F.2d 485, 489 (6th Cir. 1990).  To satisfy this requirement, a plaintiff must allege specifically the times, places, and contents of the underlying fraud.  Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 563 (6th Cir. 2003); Ullmo v. Gilmour Academy, 273 F.3d 671, 678 (6th Cir. 2001).

As to all Defendants except Newport, the substantive fraud allegations are directed at the "Defendants" collectively.  In cases involving multiple participants, dismissal is required if the complaint does not allege specific parties and their fraudulent acts.  Yuhasz, 341 F.3d at 564.  Thus, courts have rejected general allegations of fraud lumped together as to multiple defendants without identifying each defendant's specific participation.  See, e.g., Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 778 (7th Cir. 1994); DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d Cir. 1987); In re Smartalk Teleservices, Inc. Securities Litigation, 124 F. Supp. 2d 487, 501(S.D. Ohio 2000)[3]; The Limited, Inc. v. McCrory Corp., 645 F. Supp. 1038, 1044 (S.D.N.Y.

_____

[3]     Smartalk notes an exception for "group publications", which are corporate documents prepared and published by groups of defendants without describing each participant's specific role.  Examples of group publications include prospectuses, registration statements, annual reports, and corporate press releases.  124 F. Supp. 2d at 501.  No

-29-

1986).

The Court concludes, therefore, that the Plaintiff has not pled fraud with particularity as to all Defendants except Newport. Aside from the "lumped allegations", Defendants Hartford and ICMG are not accused of any specific fraudulent contact. Their relationship at most is pled as an arm-length insurance purchase. In addition, the Plaintiff was not even aware of the involvement of the McCamish Defendants and M&R during the relevant time period. In the absence of any direct relationship, these Defendants could not have made any misrepresentations to the Plaintiff, nor be under any duty to disclose material information.

As described above, however, the allegations in the Amended Complaint *are* specific as to Defendant Newport. The Court concludes that these allegations meet the requirements of Rule 9(b), and also are sufficient to preclude dismissal pursuant to Rule 12(b)(6).

The Plaintiff argues that despite the purported deficiency of direct contacts with many of the Defendants, all Defendants remain liable under agency principles. An agency relationship may be express or implied. It exists when one party, the principal, exercises the right of control over the actions of another, the agent, and those actions are directed toward the attainment of the principal's objectives. Grigsby v. O.K. Travel, 693 N.E.2d 1142, 1144 (Ohio App. 1997); Trimble-Weber v. Weber, 695 N.E.2d 344, 347 (Ohio App. 1997).[4]

In the entire Amended Complaint of 132 paragraphs, the Court can identify only *one* paragraph

_____

such corporate group publications are involved here.

[4]     Agency may also be deemed by estoppel when, although an agency does not actually exist, one holds himself out to be an agent to the detrimental reliance of another. Trimble-Weber, 695 N.E.2d at 347. Agency by estoppel is not at issue here.

-30-

that makes explicit reference to agency relationships.  In that paragraph, the Plaintiff alleges that "each of the defendants was the agent, joint venturer, and employee of each of the remaining defendants". (Amended Complaint at ¶ 4.)  Such a conclusory allegation is insufficient to plead an agency claim.  In the remainder of the Amended Complaint, the Plaintiff alleges no facts that establish any avenues of control as required for the existence of agency relationships, whether express or implied.  The Plaintiff's claims, therefore, cannot survive dismissal based upon agency principles.

For the foregoing reasons, the Court concludes that the Plaintiff has adequately pled a claim for equitable fraud against Defendant Newport.  It has not done so with respect to the other Defendants.

### III.  CONCLUSION

For the foregoing reasons, the Motions To Dismiss of the McCamish Defendants (Docket No. 17),  Defendants Hartford and ICMG (Docket No. 20), Defendant Connecticut General (Docket No. 21), and Defendant M&R (Docket No. 22) are GRANTED in their entirety.  Accordingly, all claims against these Defendants are hereby dismissed with prejudice, each party to bear its own costs.

Defendant Newport's Motion To Dismiss (Docket No. 19) is GRANTED IN PART.  Counts 1-9 are hereby dismissed with prejudice, each party to bear its own costs.  The motion is denied as to Count 10 for equitable fraud, and as to Count 11 but only to the extent it derives from the allegations of Count 10.

IT IS SO ORDERED.


Issued: October 14, 2005                       _____s/ John M. Manos_____
                                               UNITED STATES DISTRICT JUDGE